**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**KIMBERLY M. NEPA,**

       **Plaintiff,**         **CIVIL ACTION NO. 12-13362**

    **vs.**         **DISTRICT JUDGE STEPHEN J. MURPHY, III**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment or remand (docket no. 14) be granted, Defendant's motion for summary judgment (docket no. 20) be denied, and this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

**II.   PROCEDURAL BACKGROUND**

Plaintiff protectively filed Title II and Title XVI applications for a period of disability, disability insurance benefits, and supplemental security income on October 17, 2008, alleging disability beginning March 16, 2004 based on carpal tunnel syndrome, back and colon problems, anxiety, depression, and a gluten allergy.  (TR 73, 120-29, 140).  The applications were denied and Plaintiff filed a timely request for a *de novo* hearing.  On August 11, 2010 Plaintiff appeared with counsel in Oak Park, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Paul Armstrong, who presided over the hearing from Chicago, Illinois.  (TR 30-70).  Vocational Expert (VE) Luann Castellana also appeared and testified at the hearing, as did

1

Plaintiff's husband. In a November 30, 2010 decision the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act from March 16, 2004, the alleged onset of disability date, through November 30, 2010, the date of the decision. (TR 14-25). The Appeals Council declined to review the ALJ's decision and Plaintiff filed the instant action for judicial review.

### III. PLAINTIFF'S TESTIMONY, HER HUSBAND'S TESTIMONY, AND THE MEDICAL EVIDENCE

#### A. Plaintiff's Testimony

Plaintiff was twenty-eight years old on the alleged onset of disability date. She reported that she was in special education through high school due to a learning disability. (TR 40, 146). Plaintiff lives at home with her husband and three minor children. (TR 48). She has been employed in the past as a telemarketer, pizza manager, waitress, hostess, and tutor and claims that she is no longer capable of working because she is "scatterbrained" and unable to focus or concentrate on one thing at a time. (TR 39-40). Plaintiff testified that her right hand is numb from her fingertips to her elbow, her right leg is numb, and she has tingling in her toes. (TR 38, 59). She claimed that she cannot lift her right leg high enough to walk up stairs so she often trips and falls. (TR 60). She testified that she has to hold a pen with both hands in order to write. She claimed to have excessive bleeding, post traumatic stress disorder, back issues, bilateral carpal tunnel syndrome, and a developmental disorder of her knee caps that causes some instability. (TR 39, 42-45).

Plaintiff testified that she can only walk "a couple of houses" before her back and neck begin to hurt and she has to return home to rest. (TR 48). She claimed that she is not able to sit or drive a car for long periods of time and she cannot lift more than five pounds. (TR 51, 58). She reported that she cooks with the assistance of her husband and oldest daughter, she performs light housework,

and she shops a little but only during times when she can avoid crowds. (TR 49).

Plaintiff testified that she uses a cane every day, she requires custom made shoes with inserts to aid with balance, and she claimed to be in excessive pain. (TR 53, 55, 57-58). She stated that she elevates her legs three to four times a day for twenty to thirty minutes at a time. (TR 58-59). She wears knee braces for her Osgood-Schlatter disorder and wrist braces for her carpel tunnel syndrome. (TR 59). She lays down two to three times a day for as little as twenty minutes or as long as four hours at a time. (TR 60-61). She testified that she takes Seroquel, Lexapro, Topamax, Xanax, Klonopin, Vicodin, and Baclofen.

**B.     Testimony of Plaintiff's Husband**

Plaintiff was accompanied to the hearing by her husband, Nicholas Nepa, who testified that Plaintiff occasionally drops things and she is highly anemic. (TR 38-39). He claimed that Plaintiff was severely beaten by a boyfriend and her ex-husband. (TR 43). Mr. Nepa reported that Plaintiff has passed out and fallen forward on three occasions, once hitting her head on a glass table. He testified that he does the majority of grocery shopping and most of the heavy lifting around the house. He also testified that Plaintiff is not capable of working because she cannot concentrate, and she is lethargic and drowsy because of her medication. (TR 51-52). Mr. Nepa testified that Plaintiff has difficulties remembering things and concentrating, she has mood swings, and she becomes nervous and anxious in large crowds. (TR 62-63).

In his Adult Third Party Function Report Mr. Nepa stated that Plaintiff helps their children get ready for school, sometimes takes them to school and picks them up, does light housework such as sweeping, dusting and laundry if feeling well enough, assists the children with homework and her husband with dinner preparation, watches television, talks on the phone, plays with the kids, attends

church every week, and does crossword puzzles and word searches when able. (TR 152, 154, 156). Mr. Nepa stated that Plaintiff has a difficult time riding a bike or taking long walks because she has heel spurs and back and knee problems. (TR 156). He reported that Plaintiff prepares breakfast and lunch daily, and she prepares dinner two to three times a week. (TR 154). She also shops for clothes on occasion and does limited grocery shopping. She goes outside a few times each day. (TR 155). He stated that she has a short attention span and a difficult time following instructions. (TR 157).

**C.      Medical Evidence**

The undersigned has thoroughly reviewed the medical evidence and will cite to relevant reports contained in the record as necessary in response to the parties' arguments.

**IV.     VOCATIONAL EXPERT TESTIMONY**

The Vocational Expert (VE) testified that Plaintiff worked in the past as a fast food manager at a skilled, heavy exertional level, as a head waitress at a skilled, light level, as a waitress at a semi-skilled, light level, and as a customer service telemarketer at a semi-skilled, sedentary level. (TR 67). The ALJ asked the VE to consider an individual of Plaintiff's age, education, and work experience who has the residual functional capacity to perform sedentary, simple, unskilled work with superficial contact with supervisors and co-workers and no pubic contact. (TR 67). The VE testified that the individual could not perform Plaintiff's past work, but could perform simple unskilled work as a surveillance system monitor, simple sorting and inspecting, assembly positions and order clerk positions, comprising 6,000 jobs in southeast Michigan.

Next, the ALJ added the limitation that there should be no repetitive or frequent fine finger manipulation. The VE testified that many of the positions require frequent fingering. She then

stated that the individual could perform the surveillance system monitor and inspector positions but not the assembly position. (TR 68). When prompted by the ALJ, the VE testified that occasional limitations with frequent fine fingering eliminates the inspector and assembly positions but not the position of surveillance system monitor.

The ALJ added to the hypothetical the limitation that the individual must have the option to elevate her feet for at least one hour during the work day to relieve pain. The VE testified that this restriction would eliminate jobs, although she did not specifically identify which jobs would be eliminated. If the individual had difficulty concentrating on simple, unskilled work and would be off task at least fifteen minutes out of every hour she would not be capable of performing the listed positions. (TR 68). If the individual was capable of concentrating on simple, unskilled work but would miss more than two days of work each month she would not be qualified for employment. (TR 68-69).

## V.     ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2009. (TR 16). He also found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of March 16, 2004. (TR 16). The ALJ found that while Plaintiff suffered from the severe impairments of degenerative disc disease, left knee arthritis, carpal tunnel syndrome status post bilateral releases, post traumatic stress disorder, depression, and anxiety, she did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 16-19). The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform simple, unskilled sedentary work with no public contact and no more than superficial contact with supervisors and co-workers. (TR 19-23). The ALJ concluded that

Plaintiff was not capable of performing her past relevant work, but she could perform jobs that existed in significant numbers in the national economy. (TR 24). Consequently the ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act from March 16, 2004, the alleged onset of disability, through November 30, 2010, the date of the ALJ's decision.

## VI.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B.     Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step

sequential analysis.  In the first four steps, Plaintiff was required to show that:

> 1. she was not presently engaged in substantial gainful employment; and
> 2. she suffered from a severe impairment; and
> 3. the impairment met or was medically equal to a "listed impairment;" or
> 4.  she did not have the residual functional capacity to perform her past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

**C.     Analysis**

Plaintiff argues that the ALJ made an erroneous credibility determination, made a number of errors in his step five determination, failed to properly assess Plaintiff's mental health limitations, and failed to fully and fairly develop the record.  The undersigned has reviewed the parties' briefs and the transcript in its entirety and recommends remand pursuant to sentence four of 42 U.S.C. § 405(g) for the reasons that follow.

*1.     The Step Two and RFC Determinations*

7

Plaintiff applied for Social Security disability benefits claiming disability due to carpal tunnel syndrome, back and colon problems, anxiety, depression, and a gluten allergy. (TR 73, 120-29, 140). In Step Two of the five step sequential analysis the ALJ found that Plaintiff has the severe impairments of degenerative disc disease, left knee arthritis, carpal tunnel syndrome status post bilateral releases, post traumatic stress disorder, depression, and anxiety. He also considered the effect Plaintiff's obesity may have upon her impairments. In crafting the RFC, the ALJ considered Plaintiff's mental impairment, her carpal tunnel syndrome, Osgood-Schlatter disorder of the knees, degenerative disc disease, and obesity. He did not take into account Plaintiff's claim of colon issues in Step Two or in the subsequent analysis.

It is well-established that the finding of severe impairments at Step Two is a threshold determination. "[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)). When determining the RFC, the ALJ must review all of the relevant evidence and consider each of the claimant's medically determinable impairments whether or not severe. 20 C.F.R. §§ 404.1545(a)(1), (2), 416.945(a)(1), (2).

Here, the ALJ neglected to discuss Plaintiff's claims of colon issues at Step Two or in subsequent steps of the sequential analysis. Plaintiff filed for disability benefits in part due to colon issues. Evidence suggests that she has irritable bowel syndrome that creates severe chronic diarrhea and abdominal pain and causes her to use the restroom as many as fifteen to nineteen times each day. (TR 493-95). This evidence, if credible, could impact the disability determination and the ALJ's

decision as to whether Plaintiff is capable of engaging in substantial gainful employment. Plaintiff did not raise this argument in her motion, however the undersigned suggests that the ALJ's oversight of Plaintiff's colon issues warrants a sentence four remand.

*2.    Assessment of Plaintiff's Mental Health Impairments*

Plaintiff contends that the ALJ failed to properly assess her mental health limitations because he should have assigned greater weight to the opinions of treating psychiatrist Dr. Ramesh than he did to the opinion of State Agency psychiatrist Dr. Morrow.

It is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting Soc. Sec. Rul. (S.S.R.) 96-2p, 1996 WL 374188, at *5 (1996)).

Plaintiff contends that the ALJ improperly rejected the treating opinions of Dr. Ramesh and gave significant weight to the opinion of Dr. Morrow, the non-examining State Agency physician. The undersigned has reviewed the ALJ's opinion and does not find any specific reference to Dr. Ramesh or to the weight assigned to Dr. Ramesh's opinions. In fact, the ALJ referenced exhibits containing Dr. Ramesh's opinions only two times, once in relation to his finding that Plaintiff was

9

diagnosed with bipolar disorder, and a second time when stating that Plaintiff was becoming noncompliant with her medications. (TR 22). He did not note that the doctor stated that Plaintiff was becoming noncompliant with her medications because she had been prescribed and was taking too many medications. (TR 293). He also did not discuss Plaintiff's psychiatric hospitalizations under Dr. Ramesh or her discharge into a partial hospitalization program. These hospitalizations occurred in close proximity to the date of Dr. Morrow's assessment and may influence the decision as to whether Dr. Morrow's non-examining opinion is consistent with the evidence of record. Dr. Morrow noted in her opinion that Plaintiff had no psychiatric admissions, yet the record shows that Plaintiff was recommended for psychiatric hospitalization and appears to have been admitted for same. (TR 307-08, 331).

The ALJ failed to identify the weight assigned to Dr. Ramesh's opinions, let alone give good reasons for his assessment. Accordingly, the undersigned recommends a sentence four remand.

3.   *ALJ Bias*

Plaintiff argues that the ALJ committed reversible error by showing a bias toward her and an inability to fairly and fully develop the record. During the hearing the following exchange occurred between the ALJ and Plaintiff:

> ALJ: What I see in this basically what the counselor is saying is you need to be more confident and not look at things so negatively. Do you think that's true? You were in agreement with that. He's talked to you about that.
>
> Clmt: I suffer from post traumatic stress, too.
>
> ALJ: I read about that. Your father was a drunk and he abused the kids, the mother wasn't much good, and you got together with the kids and you were talking about it and you were crying... I read about all that. But you know, you're 35 years old. Is this going to affect you the rest of your life? Can you go on, put that behind you?
>
> Clmt: I also have been abused by two of my ex-boyfriends, too. So it's sort of hard

because I have a lot of triggers.

ALJ: You've got a nice husband now. (TR 42).

Later, the ALJ initiated the following exchange:

ALJ: What are you going to do for the rest of your life?

Clmt: I'm sorry?

ALJ: What do you intend to do for the rest of your life?

Clmt: What do I intend to do for the rest of my life?

ALJ: Yeah. What's your goal? What's your purpose?

Clmt: To be a good mother.

ALJ: Okay. Let's talk about, you're a high school grad, right?

Clmt: Yes.

ALJ: You've run a pizza place which required some exercise of judgment. You've brought up three kids, the youngest is eight now. They're going to be in a position if they're not already, a position where they can kind of handle things themselves. What do you want to do with the rest of your life?

Clmt: I don't know. I don't know what I can do.

ALJ: Okay

Clmt: I'm in excruciating pain.

ALJ: Let me give you a couple of hints. You're a young lady, you're 35 years old. You've lost a lot of weight. You're relatively attractive. You don't appear to have any particular problems as far as intelligence, they estimated your intelligence was average. So there are a lot of things you can do with your life, but you've got to decide what it is that you want to do with your life.
   What shows up in your counselor's notes from the Eastwood Clinic is that you've got a negative attitude about your own ability.
   Now, you'd be surprised at the kind of things you could do if you want to do it, but you've got to want to do it. There's a purpose for you being here. You believe that, I believe that, everybody believes it, but you've got to find your purpose. What you want to do with your life.

11

> You've got an opportunity now because there's a little bit of time you've got on a regular basis to think and do things like – if you're doing something that you find personally worthwhile, then it's going to get your mind off a lot of other things that you've been thinking of including maybe the past stuff that you've had with your family and prior friends, boyfriends and stuff, and the pain.  If you don't, what you're going to do if you're sitting around all day what do you think you're going to do? You're going to think about all the stuff that's happened in the past and what you're feeling now.
> So you've got to think about what you want to do with the rest of your life. You've got to make some decisions. You've got to make them relatively soon because you might get stuck in someplace.  (TR 53-55).

Plaintiff asserts that the ALJ downplayed her traumatic mental health impairments and made his own judgment that she should "get over" her issues because she is 35 years old. The Supreme Court has found that the right to a trial by an impartial decision maker is a basic requirement of due process. *In re Murchison*, 349 U.S. 133, 136 (1955). Further, "the decision maker must also avoid even the appearance of bias." *Barthelemy v. Barnhart*, 107 Fed. Appx. 689, 694 (7th Cir. 2004) (citing *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149-50 (1968)). Nevertheless, courts do not lightly conclude that a judicial bias claim has been established. *See United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995). And Courts presume that an ALJ is unbiased. *See Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). Such a presumption can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 556 (1994). Further, "the presumption [of impartiality] can be overcome only with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Comm'r*, 108 Fed. Appx. 358, 364 (6th Cir. 2004) (citations and internal quotation marks omitted). "Stated differently, any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.* (citation and internal quotation marks omitted). "[E]xpressions of impatience,

12

dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" are insufficient to establish bias unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555-56, (1994).

The undersigned suggests that the ALJ's colloquy when taken as a whole was not appropriate. This is particularly true at that point in the questioning when the claimant stated that she was in excruciating pain and the ALJ responded by telling her that she was a relatively attractive, not necessarily unintelligent young woman who should decide what she wants to do with her life and simply go do it. The ALJ's characterization of Plaintiff's father as a drunk, her mother as no good, and his implication that Plaintiff should simply "get over" the alleged abuses in her past because she now has a good husband were also not appropriate in the context of an impartial disability determination. Viewing the ALJ's comments within the framework of the disability determination, in which he failed to consider Plaintiff's colon issues, appeared to gloss over her psychiatric hospitalizations, and gave no discussion to treating mental health opinions that indicate that Plaintiff has serious impairments, the undersigned suggests that the ALJ has shown himself to be biased toward Plaintiff and incapable of rendering an impartial decision on remand.

Plaintiff has raised multiple arguments related to the inaccuracy of the ALJ's credibility assessment and Step Five determination. Because there is sufficient basis for remand on the claims addressed in this recommendation, the undersigned declines to review each argument made by Plaintiff and instead recommends that this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a full redetermination of Plaintiff's disability claim before a different ALJ.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 12, 2013          s/ Mona K. Majzoub
                                MONA K. MAJZOUB
                                UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 12, 2013          s/ Lisa C. Bartlett
                                             Case Manager